In re Petition for DISCIPLINARY AC-
TION AGAINST Lael L. SCHMIDT, an
Attorney at Law of the State of Minne-
sota.

No. C6–97–545.

Supreme Court of Minnesota.

Dec. 10, 1998.

Edward J. Cleary, Betty M. Shaw, Law-
yer's Prof. Resp., St. Paul, for appellant.

Lael L. Schmidt, Grand Forks, ND, for
respondent.

## OPINION

PER CURIAM.

Lael L. Schmidt was admitted to practice
law in North Dakota on October 10, 1984,
and in Minnesota on October 17, 1984, and
has a lengthy disciplinary history in both
states. On August 9, 1991, the North Dako-
ta Disciplinary Board placed Schmidt on pri-
vate probation for one year.[1] On December
18, 1991, he was placed on restricted status
in Minnesota for failure to comply with
Minnesota's continuing legal education re-
quirements. On October 1, 1992, he was sus-
pended in Minnesota for nonpayment of his
attorney registration fee. Schmidt's restrict-

---

1. The record does not reveal the misconduct    which formed the basis for the private probation.

ed status has never been lifted, and his license has never been reinstated.

While on the 1–year private probation in North Dakota, Schmidt violated the conditions of the probation by neglecting client matters, failing to communicate with clients, commingling personal and trust account funds, and failing to keep adequate trust account books and records. As a result, the North Dakota Supreme Court suspended him on September 20, 1993, for 30 days. North Dakota reinstated Schmidt on June 15, 1994. On April 3, 1996, Schmidt and the Director of the Minnesota Office of Lawyers Professional Responsibility (Director) entered into a stipulation placing him on private probation based on the misconduct underlying his September 20, 1993, North Dakota suspension.

On February 14, 1997, the North Dakota Supreme Court placed Schmidt on interim suspension, and, shortly thereafter, appointed a professional trustee to handle his North Dakota client files. On July 16, 1997, the North Dakota Supreme Court disbarred Schmidt based on its conclusion that "Schmidt engaged in a pattern of neglect with respect to client matters and he knowingly deceived clients with the intent to benefit himself and thereby caused serious or potentially serious injury to clients for which disbarment is an appropriate sanction."[2] Schmidt received notice of, but elected not to participate in, the disciplinary proceedings that led to his disbarment in North Dakota.

After Schmidt's interim suspension, but before he was disbarred, the Director filed an unrelated Petition for Disciplinary Action with this court, alleging that Schmidt engaged in misconduct in Minnesota, including the unauthorized practice of law in Minnesota, making misrepresentations to a Minnesota court, neglecting a North Dakota client in a Minnesota action, and failing to cooperate with the Director's disciplinary investigation.[3] Although the Petition was personally served on Schmidt, he did not answer the Petition.

Upon learning that the North Dakota Supreme Court had disbarred Schmidt, the Director filed a Supplementary Petition for Disciplinary Action with this court, seeking reciprocal discipline pursuant to Rule 12(d), Rules on Lawyers Professional Responsibility (RLPR).[4] The Supplementary Petition asks this court to impose discipline identical to that imposed in North Dakota and disbar Schmidt. The Supplementary Petition was served on Schmidt by mail, and, as was the case with the Director's initial petition and the North Dakota proceedings which resulted in his disbarment, Schmidt has not interposed an answer. By order dated January 15, 1998, we deemed the allegations in the Director's Petition and Supplementary Petition admitted pursuant to Rule 13(b), RLPR, and Schmidt was formally suspended on July 28, 1998, pending final disposition of the two petitions.

We will impose reciprocal discipline when we are satisfied that the proceedings in the other state were consistent with fundamental fairness and due process and that similar discipline would be warranted in Minnesota.[5] In determining whether disciplinary proceedings are consistent with fundamental fairness and due process, we

---

2. *Disciplinary Board v. Schmidt*, 1997 ND 132, 566 N.W.2d 407, 409 (N.D.1997).

3. According to the Petition, Schmidt's alleged misconduct violated Minnesota Rules of Professional Conduct (MRPC) 3.3(a)(1) (candor toward the court), 4.1 (truthfulness in statements to others), 5.5 (unauthorized practice), 8.1(a)(3) (noncooperation), 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation) and 8.4(d) (conduct prejudicial to the administration of justice), Rule 25 (noncooperation), Rules on Lawyers Professional Responsibility (RLPR), and the terms of his April 1996 private probation.

4. The specific facts relating to Schmidt's North Dakota misconduct are set out in the North Da-

kota Order of Disbarment and will not be repeated here. *See Schmidt*, 566 N.W.2d at 409–10.

5. RLPR Rule 12(d) ("[T]his Court may * * * impose the identical discipline unless it appears that discipline procedures in the other jurisdiction were unfair, or the imposition of the same discipline would be unjust or substantially different from discipline warranted in Minnesota."); *see also In re Koss*, 572 N.W.2d 276, 277 (Minn. 1997) ("[This court] will impose reciprocal discipline only when [it is] persuaded that the attorney was afforded sufficient due process in the underlying proceeding to meet [its] standards of fundamental fairness.").

review the record of the underlying proceedings to see if the lawyer being disciplined received notice of the allegations against him and whether he was provided an opportunity to respond to those allegations.[6]

■ In the North Dakota disciplinary proceedings which led to Schmidt being disbarred, the North Dakota Disciplinary Board served Schmidt with a summons, an initial petition, and a supplementary petition seeking discipline for neglect of several client matters, failure to communicate with clients, improper safekeeping of property, the unauthorized practice of law during a suspension, and failure to cooperate with disciplinary proceedings. At each phase of the North Dakota disciplinary proceedings, Schmidt had the opportunity to present a defense and offer mitigating circumstances, but chose not to participate. We can only conclude that the North Dakota disciplinary proceedings were fundamentally fair and consistent with due process.

■ Having concluded that the North Dakota disciplinary proceedings were fundamentally fair and consistent with due process, we are left with the question of what discipline to impose on Schmidt in Minnesota. The North Dakota Supreme Court determined that Schmidt converted his clients'

funds for his own use,[7] neglected client matters,[8] failed to communicate with his clients,[9] and practiced law while on suspension in Minnesota,[10] in addition to lying to his clients, creditors of his clients, and a Minnesota court.[11] Finally, the North Dakota court concluded that Schmidt failed to cooperate with the North Dakota Disciplinary Board.[12]

■ We have disbarred attorneys for engaging in misconduct similar to the above. We have held that the misappropriation of client funds in and of itself is serious misconduct that, absent proof of mitigating circumstances,[13] "almost always results in either disbarment or substantial suspension from the practice of law."[14] We have also imposed disbarment or indefinite suspension on attorneys for repeated instances of client neglect and failure to communicate,[15] as well as for making misrepresentations to clients, the public, and the courts.[16] In cases involving repeated instances of serious misconduct, we have disbarred attorneys who have engaged in the practice of law without a valid license.[17] Finally, we have said that an attorney's lack of cooperation with disciplinary authorities constitutes "serious professional misconduct."[18] Based on the misconduct

6. *In re Morin*, 469 N.W.2d 714, 716–17 (Minn. 1991).

7. *See Schmidt*, 566 N.W.2d at 408–09.

8. *See id.*

9. *See id.*

10. *Id.* at 409.

11. *See id.* at 408–09.

12. *See id.*

13. *See, e.g., In re Ruttger*, 566 N.W.2d 327, 331 (Minn.1997) (listing cases).

14. *Id.* (quoting *In re Strid*, 439 N.W.2d 721, 721 (Minn.1989)).

15. *See Morin*, 469 N.W.2d at 717 (imposing reciprocal discipline of disbarment for neglecting client matters, making misrepresentations to clients, and failing to cooperate); *In re Fallon*, 389 N.W.2d 509, 511 (Minn.1986) (imposing indefinite suspension for failure to answer letters

and return calls and failure to attend scheduled hearings); *In re Weyhrich*, 339 N.W.2d 274, 278 (Minn.1983) (imposing disbarment for gross neglect of client matters, failure to communicate with clients, failure to attend scheduled hearings, and failure to cooperate).

16. *See In re Jones*, 383 N.W.2d 303, 306–07 (Minn.1986).

17. *See In re Hunter*, 473 N.W.2d 866, 868–69 (Minn.1991) (ordering disbarment of attorney who misappropriated client funds, failed to cooperate, falsely swore compliance with court's suspension order, and continued to practice law while on suspension); *In re Feldman*, 391 N.W.2d 826, 828 (Minn.1986) (ordering disbarment of attorney charged with over 18 counts of professional misconduct including neglect, failure to communicate, misrepresentation, continuing to practice law without a valid license, and failure to cooperate with disciplinary authorities).

18. *In re Grzybek*, 552 N.W.2d 215, 217 (Minn. 1996).

found by the North Dakota Supreme Court and the discipline we have imposed in similar cases, we conclude that similar discipline to that imposed on Schmidt by North Dakota is warranted in Minnesota. In imposing discipline, our responsibility is to protect the public, guard the administration of justice, and to deter future misconduct.[19] Given the nature and extent of Schmidt's North Dakota misconduct, any sanction short of disbarment would be ineffective in meeting that responsibility.

Because we are satisfied that Schmidt's North Dakota proceedings were fundamentally fair and consistent with due process and that we would have independently disbarred Schmidt for the same misconduct,[20] we conclude that the reciprocal discipline of disbarment is warranted. We therefore order that, upon the filing of this opinion, respondent Lael L. Schmidt is disbarred. We further order that he pay costs in the amount of $900 to the Director of the Office of Lawyers Professional Responsibility pursuant to Rule 24(a), RLPR, and that he comply fully with the requirements of Rule 26, RLPR.

Disbarred.

RUSSELL A. ANDERSON, J., took no part in the consideration or decision of this case.

**19.** *In re Jensen,* 542 N.W.2d 627, 632 (Minn. 1996).

**20.** While we disbar Schmidt applying the doctrine of reciprocal discipline, we note that Schmidt's misconduct in Minnesota would have independently supported our decision to disbar him.