In re PETITION FOR DISCIPLINARY ACTION AGAINST Charles E. MEADEN, an Attorney at Law of the State of Minnesota.

No. C3–00–1955.

Supreme Court of Minnesota.

June 28, 2001.

Edward F. Kautzer, Jack D. Nelson, Ruvelson & Kautzer, Chartered, St. Paul., for appellant.

Edward J. Cleary, Director, Martin A. Cole, Senior Asst. Director, Office of Lawyers Professional Responsibility, St. Paul, for respondent.

## OPINION

### PER CURIAM.

Respondent Charles E. Meaden was admitted to practice law in Minnesota in 1984, but is currently suspended in this state for non-payment of attorney registration fees and is on restricted status for failure to comply with continuing legal education requirements. By order of the New Jersey Supreme Court, dated July 13, 2000, Meaden was suspended from the practice of law in that state for three years, effective August 11, 2000. The Director of Minnesota's Office of Lawyers Professional Responsibility (Director) was notified of Meaden's New Jersey suspension and has petitioned this court for an order imposing identical discipline in Minnesota under Rule 12(d) of the Minnesota Rules on Lawyers Professional Responsibility (RLPR). Because we conclude that the procedures in New Jersey were consistent with fundamental fairness and due process and that the imposition of identical discipline is neither unjust nor substantially different from that which is warranted under Minnesota law, we suspend Meaden from the practice of law in this state for a minimum of three years from the date of this opinion.

In March 1996, while in a store in California, Meaden surreptitiously obtained the name and credit card number of another customer. On April 17, 1996, using an assumed name and the credit card number he had obtained in California, Meaden placed a $5,800 order for golf equipment with a Florida golf supply company. The salesperson became suspicious and contacted the credit card owner, who denied authorizing the purchase. On April 19, Meaden was arrested in New Jersey when

he accepted delivery of the golf equipment. At the time, Meaden claimed that he had found the boxes containing the golf equipment. When asked to identify himself, Meaden gave his own name, but he carried business cards containing the assumed name under which he had ordered the equipment and the name of the credit card owner.

Meaden was subsequently indicted in New Jersey on charges of criminal attempt in violation of N.J. Stat. Ann. § 2C:5–1 (West 1995), and receiving stolen property in violation of N.J. Stat. Ann. § 2C:20–7 (West 1995). He pleaded not guilty and was eventually admitted into a pretrial intervention program. Admission into the program allowed Meaden to avoid being tried on the charges.[1] Meaden did not inform the New Jersey Office of Attorney Ethics (OAE) of the criminal charge against him as required by Rule 1:20–13(a)(1) of the New Jersey Rules of Court. The OAE eventually learned of the charges and, in May 1997, filed a "Disciplinary Action Formal Complaint" with the New Jersey Supreme Court alleging that Meaden had committed professional misconduct, including the commission of a criminal act and conduct involving dishonesty, fraud, deceit, and misrepresentation. The complaint also alleged that Meaden failed to report the charge to the OAE as required.

A New Jersey district ethics committee held a hearing on the OAE's complaint in March 1998. At that hearing, Meaden, represented by counsel, stipulated to the facts contained in both the police report concerning his arrest and the prosecutor's pretrial intervention report. He also testi-

fied on his own behalf. In his testimony, Meaden admitted the misconduct but claimed that he had only limited knowledge of the events leading up to his arrest. He also testified about his mental health history, which included over 20 years of treatment for depression, at least one hospitalization for suicidal intentions, and a diagnosis of bipolar disorder.

Both Meaden and the OAE presented mental-health experts who testified about the role Meaden's mental health played in his misconduct. They both were of the opinion that Meaden suffered from bipolar disorder and that he had experienced hypomanic episodes during the time leading up to the events of April 19, 1996. Meaden's expert offered the opinion that, at the time Meaden was carrying out his scheme, he was able to tell right from wrong but could not control his actions. The OAE's expert was of the opinion that, although Meaden exercised defective judgment, he was not "out of control."

During Meaden's testimony at the hearing, it came out that he had obtained a firearm purchaser identification card and had made several applications for permits to purchase guns between 1994 and 1996. When obtaining the firearm purchaser identification card and filling out the applications for the permits to purchase guns, Meaden was required to indicate whether he had been treated or observed by a psychiatrist for any mental condition or whether he had been confined in any hospital for observation for any mental condition. In each instance, Meaden indicated that he had not. As a result, in April of 1998, the OAE filed a second disciplinary complaint alleging that Meaden had en-

---

1. Under New Jersey statutes, one who has not previously been convicted of a criminal offense may apply for a program of supervisory treatment in lieu of ordinary prosecution. N.J. Stat. Ann. § 2C:43–12 (West 1995). If approved for referral to such a program, the charges are held in an inactive status and, if the prosecutor consents, the indictment is dismissed with prejudice upon completion of the program. *Id.* § 2C:43–13, subds. (b), (d).

gaged in dishonesty in obtaining the purchaser identification card and in filling out the applications for permits to purchase guns.

The district ethics committee that heard the initial complaint eventually recommended that Meaden be disciplined based on that complaint. Oral argument on both complaints was held before the New Jersey Disciplinary Review Board on May 13, 1999. Because of a recording malfunction, Meaden was unable to obtain a transcript of the oral argument and the Disciplinary Review Board granted reargument, which was held on October 14, 1999. Eight days before the second oral argument, Meaden submitted to the Disciplinary Review Board a September 14, 1999, New Jersey Superior Court order expunging from court and law enforcement agency records all information relating to his April 19, 1996, arrest and the subsequent charges. At the October 14 oral argument and in a subsequent motion to the Disciplinary Review Board, Meaden contended that the expunged records ought not be considered in his disciplinary matter. The Disciplinary Review Board determined that it could consider Meaden's criminal history despite the expungement order and that there was clear and convincing evidence that Meaden had violated Rule 8.4(b) of the New Jersey Rules of Professional Conduct (NJRPC) (committing a criminal act that reflects adversely on a lawyer's honesty, trustworthiness, or fitness as a lawyer) by stealing the credit card number and attempting to use that number to commit theft. The board further determined that Meaden's failure to disclose his psychiatric history

on the firearms applications violated Rule 8.4(c), NJRPC (conduct involving dishonesty, fraud, deceit, or misrepresentation). The Disciplinary Review Board recommended that Meaden's license to practice law in New Jersey be suspended for three years.[2] On July 13, 2000, the New Jersey Supreme Court issued an order implementing the Disciplinary Review Board's three-year suspension of Meaden, effective August 11, 2000. *In re Meaden*, 165 N.J. 22, 754 A.2d 1148 (2000).[3]

■ The Director now seeks identical discipline under Rule 12(d), RLPR. "The purpose for imposing identical disciplinary sanctions is to prevent a sanctioned attorney from avoiding the consequences of misconduct by simply moving his or her practice to another state." *In re Heinemann*, 606 N.W.2d 62, 64 (Minn.2000). This court

> may * * * impose the identical discipline unless it appears that discipline procedures in the other jurisdiction were unfair, or the imposition of the same discipline would be unjust or substantially different from discipline warranted in Minnesota. * * * Unless the Court determines otherwise, a final adjudication in another jurisdiction that a lawyer had committed certain misconduct shall establish conclusively the misconduct for purposes of disciplinary proceedings in Minnesota.

Rule 12(d), RLPR.

■ To meet the rule's fair procedure requirement, the proceedings in the other jurisdiction must be "consistent with fun-

---

**2.** The Disciplinary Review Board's voting record in this case indicates that, of seven members voting, four voted for the three-year suspension and three voted to disbar Meaden.

**3.** Under the New Jersey Rules of Court, decisions of the Disciplinary Review Board that do not recommend disbarment become final

upon entry of an appropriate order by the Clerk of the Supreme Court. N.J. R. Ct. 1:20–16(b). The Supreme Court may, on its own motion, review determinations of the board in which disbarment is not recommended. *Id.*

damental fairness and due process." *In re Schmidt,* 586 N.W.2d 774, 775 (Minn.1998). Thus, "we review the record of the underlying proceedings to see if the lawyer being disciplined received notice of the allegations against him and whether he was provided an opportunity to respond to those allegations." *Id.* at 775–76; *see also Heinemann,* 606 N.W.2d at 64 (holding that procedure was fair when the attorney was given fair notice, an opportunity to respond and be heard, and an opportunity to participate fully in the process); *In re Roff,* 581 N.W.2d 32, 34 (Minn.1998) (holding that procedure was fair when the attorney knew of the complaint filed by disciplinary authorities and at each phase of the proceeding had an opportunity to present a defense and offer mitigating circumstances).

The record here indicates that: (1) Meaden received notice of the complaints filed against him and filed answers to those complaints; (2) he had a hearing on the initial complaint before a district ethics committee, at which he testified, offered the testimony of a mental health expert on his behalf, produced evidence of mitigating circumstances, and was represented by counsel; and (3) he had an oral argument on both complaints before the New Jersey Disciplinary Review Board in May 1999 and, when it was determined that no transcript of that argument was available due to a recording malfunction, he was granted reargument. Moreover, by arguing that, "[a]lthough procedurally fair, substantively the New Jersey Supreme Court did not give reasonable or adequate weight to the expungement of the New Jersey criminal matter, and failed to give reasonable deference to the treating psychologist['s] testimony or to the mitigating factors supported by that

testimony," Meaden concedes that the New Jersey proceedings were procedurally fair. Thus, based on the record before us, we conclude that the New Jersey disciplinary proceedings in this case provided Meaden fundamental fairness and due process.

Even if procedures are fair, this court may not impose identical discipline if to do so would be unjust or result in discipline substantially different from that warranted in Minnesota. Rule 12(d), RLPR. As noted above, Meaden argues that the three-year suspension imposed by the New Jersey Supreme Court is inappropriate because it gave inadequate weight to the fact that the criminal matter that formed the basis of the first complaint had been expunged and did not give reasonable deference to the testimony of the psychiatric experts and the mitigating factors supported by their testimony.

With respect to the expunged records, Meaden argues that, under Minnesota law, expungement must be considered in determining the level of discipline warranted by his misconduct and, therefore, identical discipline is not appropriate. In essence, he argues that, because Minnesota's courts must consider the interests of the public and public safety before issuing an expungement order, Minn.Stat. § 609A.03, subd. 5 (2000), this court would consider an expungement to be a factor in favor of reducing the level of discipline warranted by the misconduct in an attorney discipline matter. Although it is not clear that this court would treat Meaden's expunged criminal records any differently than they were treated in the New Jersey proceedings, we need not resolve that issue to determine whether Meaden's three-year suspension was supported by the record.[4]

4. Although we do not decide whether we would treat expunged records differently than

New Jersey, we note that Minnesota's applica-

At the March 1998 district ethics committee hearing, Meaden admitted the misconduct and stipulated to the facts underlying that misconduct. Based on that admission and stipulation we conclude that the record supports the discipline imposed. Therefore, consideration of information in the expunged records could not have prejudiced Meaden.

Meaden's second argument is that the Disciplinary Review Board did not give sufficient consideration to his mental illness as a mitigating factor. Relying on *In re Weyhrich*, 339 N.W.2d 274, 279 (Minn. 1983) (listing requirements that must be met in order for a psychological disability to be considered a mitigating factor), and *In re Otis*, 582 N.W.2d 561 (Minn.1998), he contends that this court would have treated his mental illness as a more significant mitigating factor than did the Discretionary Review Board and suggests that we would have imposed less discipline than was imposed by the New Jersey Supreme Court. We have thoroughly reviewed the record before us and are satisfied that the New Jersey Disciplinary Review Board gave due consideration to whether Meaden's mental health condition mitigated his misconduct. Although we might have imposed different discipline, either more or less, had Meaden's disciplinary proceedings originated in Minnesota, that is not the situation presented. The question we must answer is whether the discipline imposed by the New Jersey Supreme Court is unjust or substantially different from discipline warranted in Minnesota. Rule

12(d), RLPR. Based on this record, we conclude that it is not. Accordingly, we order that:

1. Respondent Charles E. Meaden is indefinitely suspended from the practice of law in this state as of the date of this opinion. Meaden may apply for reinstatement under Rule 18, RLPR, after a minimum of three years.

2. Respondent Charles E. Meaden shall pay to the Director the sum of $900 in costs, in addition to disbursements, pursuant to Rule 24, RLPR.

So ordered.

tion for admission to the bar asks the following question:

4.01 Have you *ever* in your entire life been charged with, arrested for, pleaded guilty to, or been convicted of a felony or gross misdemeanor or the equivalent? Attach copies of records relative to the incident(s), including police reports and court records.

Provide a narrative statement describing the incident(s) or circumstances. (You must disclose this requested information, even if the charges were dismissed or you were acquitted, the conviction was stayed or vacated, the record sealed or expunged or you were told you need not disclose this information.)

