STATE OF MINNESOTA

IN SUPREME COURT

A14-1901

Original Jurisdiction                                                                    Per Curiam

In re Petition for Disciplinary Action against                    Filed: June 17, 2015
Gregory Gerard McPhee, a Minnesota Attorney,             Office of Appellate Courts
Registration No. 316696

_____

Martin A. Cole, Director, Craig D. Klausing, Senior Assistant Director, Office of
Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Eric T. Cooperstein, Law Office of Eric T. Cooperstein, PLLC, Minneapolis, Minnesota,
for respondent.

_____

S Y L L A B U S

1.      The attorney disciplinary proceedings conducted in New York were

fundamentally fair and consistent with due process.

2.      Indefinite suspension from the practice of law with no right to petition for

reinstatement for 2 years is the appropriate reciprocal discipline to impose on the

attorney.

O P I N I O N

PER CURIAM.

        In 2007, the New York Supreme Court, Appellate Division, suspended respondent

1

Gregory Gerard McPhee for 2 years for engaging in a pattern of client neglect, failing to return unearned fees, and failing to cooperate in disciplinary investigations. After learning of McPhee's New York suspension, the Director of the Office of Lawyers Professional Responsibility ("the Director") petitioned to impose reciprocal discipline in Minnesota. Because we conclude that the disciplinary proceedings in New York were fundamentally fair and that indefinite suspension from the practice of law without the possibility of reinstatement for 2 years would not be unjust or substantially different from the discipline that would be imposed in Minnesota, we indefinitely suspend McPhee with no right to petition for reinstatement for 2 years.

I.

McPhee was admitted to practice law in New York in 2000. *In re McPhee*, 844 N.Y.S.2d 771, 771 (N.Y. App. Div. 2007). In 2002, he was admitted to practice in Minnesota. This case involves professional misconduct that McPhee committed in New York.

Several years after McPhee was admitted to practice in New York, the Grievance Committee of the Fifth Judicial District in New York[1] filed a petition with the New York Supreme Court, Appellate Division Fourth Judicial Department ("New York court"), charging McPhee with acts of professional misconduct arising from his representation of five clients in criminal matters. *Id.* at 771. McPhee filed an answer denying the

---

[1] In New York, each judicial district has a grievance committee that considers and investigates all matters involving allegations of misconduct by an attorney engaged in the practice of law in the judicial district. N.Y. Comp. Codes R. & Regs. tit. 22, § 1022.19.

allegations. *Id.* The New York court appointed a referee to hear and report on issues of fact. *Id.* McPhee did not attend the hearing before the referee, did not respond to a motion to confirm the referee's factual findings, and did not appear before the New York court. *Id.*

The New York court confirmed the following findings of fact made by the referee:

[McPhee] accepted legal fees from four incarcerated clients, failed to complete the work for which he was retained and refunded no part of the legal fees. . . . [He] failed to appear at a scheduled court date on behalf of another client in a criminal matter, failed to return the client's telephone calls and moved from his law office without notifying the client. Finally, . . . [he] failed to comply timely with requests from petitioner for information and for responses to client complaints, requiring petitioner to obtain a subpoena from this Court.

*Id.*

The New York court agreed with the referee's findings that there were no mitigating circumstances to be considered when imposing discipline for McPhee's misconduct, but that there were aggravating factors. The aggravating factors included McPhee's contact with two of the Grievance Committee's prospective witnesses prior to the hearing for the purpose of persuading the witness to sign statements that the witnesses termed false and his deliberate failure to appear for the hearing before the referee. *Id.* at 772. The New York court also considered McPhee's failure to respond to the Grievance Committee's motion and to appear before the court as ordered. *Id.* The New York court imposed a 2-year suspension for McPhee's misconduct. *Id.*

After learning of the discipline imposed on McPhee by the New York court, the Director petitioned for disciplinary action against McPhee, seeking reciprocal discipline

3

pursuant to Rule 12(d), Rules on Lawyers Professional Responsibility (RLPR). McPhee filed a response to the petition, admitting the allegations regarding his misconduct in New York. We ordered McPhee to submit a memorandum addressing whether a 2-year suspension is the appropriate discipline for us to impose.

McPhee argues that a 2-year suspension from practice is substantially different from the discipline warranted in Minnesota. Instead, McPhee maintains, a 6-month suspension is the appropriate discipline. The Director counters that imposition of reciprocal discipline is appropriate.

## II.

The Director may petition for reciprocal discipline based on knowledge, from any source, "that a lawyer licensed to practice in Minnesota has been publicly disciplined . . . in another jurisdiction." Rule 12(d), RLPR. Unless we conclude otherwise, a final determination in another jurisdiction that the lawyer has committed misconduct "establish[es] conclusively the misconduct for purposes of disciplinary proceedings in Minnesota." *Id.* We may impose reciprocal discipline "unless it appears that discipline procedures in the other jurisdiction were unfair, or the imposition of the same discipline would be unjust or substantially different from discipline warranted in Minnesota." *Id.*; *accord In re Wolff*, 810 N.W.2d 312, 316 (Minn. 2012). McPhee does not challenge the New York court's finding that he committed misconduct. Therefore, we must determine whether New York's disciplinary procedures were fair to McPhee and, if so, whether imposing reciprocal discipline would be unjust or substantially different from the discipline McPhee would receive in Minnesota for his misconduct.

4

A.

To meet the procedural fairness requirement, the disciplinary proceedings at issue must be "consistent with fundamental fairness and due process." *In re Schmidt*, 586 N.W.2d 774, 775 (Minn. 1998). We determine from the record of the underlying proceedings whether the attorney received notice of the allegations and had an opportunity to respond to them. *Id.* at 775-76. When an attorney has received notice of the proceedings and an opportunity to participate in the process by presenting evidence of good character or mitigation, the procedural fairness requirement is satisfied. *In re Keller*, 656 N.W.2d 398, 401 (Minn. 2003).

The proceedings in New York met the legal standard for procedural fairness. McPhee received notice of the New York disciplinary proceedings and participated in them by filing an answer. *McPhee*, 844 N.Y.S.2d at 771. He also had the opportunity to present evidence to the referee. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 1022.20(d) (allowing an attorney in a disciplinary case to contest facts before a referee and to appear before the New York court and be heard in mitigation). That McPhee chose not to attend the hearing before the referee has no bearing on our determination of procedural fairness. *Wolff*, 810 N.W.2d at 316. The record from the New York proceedings clearly establishes that the fairness requirement of Rule 12(d), RLPR was satisfied.

B.

We next consider whether imposition of the same discipline imposed by New York would be either unjust or substantially different from the discipline warranted in Minnesota. *In re Meaden*, 628 N.W.2d 129, 134 (Minn. 2001). The New York court

5

concluded that McPhee engaged in a pattern of neglect, failed to return unearned fees, and failed to cooperate in the disciplinary proceedings. McPhee accepted legal fees from four incarcerated clients. But he failed to complete the work he was hired to perform, and he did not refund any legal fees to these clients. In another criminal case, McPhee both failed to appear at a court hearing for his client and failed to communicate with this client. Finally, McPhee did not respond in a timely manner to disciplinary complaints or requests for information during his New York disciplinary proceedings.[2]

We have long recognized that "an attorney's pattern of neglect, lack of communication, and failure to cooperate with the disciplinary investigation or proceedings typically warrants an indefinite suspension." *In re McCabe*, 591 N.W.2d 723, 725 (Minn. 1999) (citations omitted). We have determined that an indefinite suspension with no right to petition for reinstatement for 2 years is the appropriate discipline when an attorney neglected multiple clients, failed to return unearned retainers, and failed to cooperate with the Director. *See In re Taplin*, 837 N.W.2d 306, 314 (Minn. 2013) (indefinitely suspending an attorney with no right to petition for reinstatement for 2 years when the attorney neglected two clients, failed to return unearned retainers, and

---

[2] Similar misconduct occurring in Minnesota also would have violated a number of our rules, including Minn. R. Prof. Conduct 1.3 (requiring an attorney to act with reasonable diligence), 1.4 (requiring an attorney to communicate with the client), 1.15(c)(4) (requiring an attorney to promptly pay the client, as requested, client funds in the attorney's possession), 3.4(c) (prohibiting an attorney from knowingly disobeying an obligation under the rules of a tribunal), 8.1 (mandating cooperation in a disciplinary proceeding), and 8.4(d) (prohibiting an attorney from engaging in conduct prejudicial to the administration of justice), and Rule 25, RLPR (requiring an attorney to cooperate in a disciplinary proceeding).

failed to cooperate in the disciplinary investigation).[3]  In a reciprocal discipline case for an attorney who engaged in similar misconduct as McPhee, we also have imposed a longer period of suspension.  *See, e.g.*, *In re Mahler*, 823 N.W.2d 453, 454 (Minn. 2012) (order) (indefinitely suspending attorney for a minimum of 3 years after he was suspended in North Dakota for neglecting clients, mishandling client funds, and charging excess fees).

Relevant to our consideration, the New York court determined that McPhee's misconduct was aggravated by his failure to cooperate during the New York disciplinary proceedings.  For example, McPhee failed to appear at a hearing before the referee and failed to respond to the Grievance Committee's motion to confirm the referee's findings.  In Minnesota, as in New York, an attorney's failure to cooperate during disciplinary proceedings may be an aggravating factor if that conduct is not otherwise considered.  *Taplin*, 837 N.W.2d at 313.  McPhee's failure to cooperate during the disciplinary proceedings before the New York court was not considered by the referee and is separate from his failure to cooperate with the New York disciplinary investigations.  Therefore,

---

[3]     We have suspended other attorneys in similar circumstances.  *See In re Campbell*, 603 N.W.2d 128, 133 (Minn. 1999) (indefinitely suspending an attorney with no right to petition for reinstatement for 2 years when the attorney neglected seven clients, failed to return unearned retainers and client files, had negative balances in her trust account, and failed to cooperate with the Director); *In re Olson*, 545 N.W.2d 35, 38 (Minn. 1996) (indefinitely suspending an attorney with no right to petition for reinstatement for 2 years when the attorney neglected two clients, made misrepresentations to clients, and failed to cooperate in the disciplinary investigation or appear before the court in the disciplinary case); *see also In re Kinnuen*, 502 N.W.2d 773, 774-75 (Minn. 1993) (indefinitely suspending an attorney with no right to petition for reinstatement for 18 months for neglect of two clients, trust account violations, and a complete failure to cooperate in the disciplinary proceedings).

McPhee's failure to cooperate with the New York court is an additional aggravating factor.

In support of his argument that reciprocal discipline of a 2-year suspension is substantially different from the discipline warranted in Minnesota, McPhee relies on the few cases in which we have declined to impose reciprocal discipline. These cases demonstrate that, when unique factual circumstances established that imposing the identical discipline would be unjust or when another court disbarred an attorney for misconduct that the Director agreed would result in a substantially different disposition in Minnesota, we have concluded that reciprocal discipline is not warranted. For example, in *In re Karlsen*, we imposed a 1-year suspension on an attorney who was disbarred in North Dakota while his case was pending before us. 778 N.W.2d 307, 313 (Minn. 2010). The Director argued against disbarment in *Karlsen* because the attorney lacked a prior disciplinary history and the misconduct, though egregious, did not result in substantial harm to clients. *Id.*[4] The factors present in the cases cited by McPhee, however, are not present here.

Because of the nature and severity of McPhee's misconduct and the existence of an aggravating factor, we conclude that the 2-year suspension by the New York court is

---

[4] Other cases in which we have declined to impose reciprocal disbarment include: *In re Pennington*, 706 N.W.2d 482, 482 (Minn. 2005) (order) (imposing a 2-year suspension recommended by the parties after an attorney was disbarred in Maryland for misconduct similar to that for which we had imposed a public reprimand or a short period of suspension); *In re Otis*, 582 N.W.2d 561, 564-65 (Minn. 1998) (declining to impose reciprocal discipline of disbarment because the attorney's misconduct was caused by a seizure disorder that had been treated after the misconduct but before the Minnesota disciplinary proceedings).

neither unjust nor substantially different from the discipline warranted in Minnesota. We therefore impose reciprocal discipline and indefinitely suspend McPhee with no right to petition for reinstatement for 2 years.

Accordingly, we order that:

1. Respondent Gregory Gerard McPhee is suspended from the practice of law in the State of Minnesota, effective 14 days from the date of the filing of this opinion, and is ineligible to petition for reinstatement for a minimum of 2 years from the date of the filing of this opinion.

2. Respondent shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals), and shall pay $900 in costs pursuant to Rule 24, RLPR.

3. Respondent may petition for reinstatement pursuant to Rule 18(a)-(d), RLPR. Reinstatement is conditioned on successful completion of the professional responsibility portion of the state bar examination and satisfaction of continuing legal education requirements pursuant to Rule 18(e), RLPR.