IN RE Petition for DISCIPLINARY AC-
TION AGAINST Terri Lynn FAH-
RENHOLTZ, a Minnesota Attorney,
Registration No. 0290828.

A15-1227

Supreme Court of Minnesota.

Filed: June 7, 2017

Susan M. Humiston, Director, Timothy M. Burke, First Assistant Director, Amy M. Mahowald, Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Terri L. Fahrenholtz, Moorhead, Minnesota, pro se.

## OPINION

PER CURIAM.

This case involves the question of whether we should impose reciprocal discipline on respondent Terri Lynn Fahrenholtz. The Director of the Office of Lawyers Professional Responsibility (Director) served Fahrenholtz with a petition for reciprocal disciplinary action after the North Dakota Supreme Court disbarred Fahrenholtz from the practice of law in North Dakota for misappropriating client funds and abandoning the cases of at least eight clients, *In re Fahrenholtz*, 863 N.W.2d 239 (N.D. 2015). We hold that North Dakota's disciplinary proceedings were fundamentally fair, and that the discipline the North Dakota Supreme Court imposed would not be unjust or substantially different from the discipline that would be imposed in Minnesota. We therefore disbar Fahrenholtz from the practice of law in Minnesota.

## FACTS

Terri Lynn Fahrenholtz was admitted to the practice of law in Minnesota in 1999 and admitted to the North Dakota bar in 2006. *Fahrenholtz*, 863 N.W.2d at 239-40. In 2014, the North Dakota Disciplinary Board served a petition for discipline on Fahrenholtz. *Id.* at 240. Based on the investigation of a trustee appointed by the North Dakota Disciplinary Board, a hearing panel found that Fahrenholtz abandoned the cases of at least eight clients. *Id.* at 239-40. The panel further found that, in one bankruptcy matter, Fahrenholtz accepted a retainer from a client but neither deposited the retainer into a trust account nor refunded the retainer to the client. *Id.* at 240. In other cases, Fahrenholtz failed to appear for hearings, failed to file complaints, and failed to communicate with clients about the status of their cases. *Id.*

Based on these findings, the hearing panel recommended that Fahrenholtz be disbarred. *Id.* at 241. Fahrenholtz did not object to the hearing panel's findings of fact, conclusions of law, and recommendation, so they were deemed stipulated by the North Dakota Supreme Court. *Id.* That court ordered Fahrenholtz disbarred in North Dakota as of May 7, 2015. *Id.* at 239, 241.[1]

On July 7, 2015, the Director filed a petition for disciplinary action against Fahrenholtz, seeking reciprocal discipline under Rule 12(d) of the Minnesota Rules on Lawyers Professional Responsibility (RLPR). The Director failed in her attempts to serve Fahrenholtz personally at her last known address. The Director then applied to us for an order suspending Fahrenholtz under Rule 12(c)(1), RLPR, which allows for the suspension of an attorney who cannot be located.

On September 1, 2015, we suspended Fahrenholtz and gave her one year in

1. On April 14, 2017, the Kansas Supreme Court disbarred Fahrenholtz. *In re Fahrenholtz*, 392 P.3d 125, 133 (Kan. 2017).

which to file a motion to vacate the suspension order. Fahrenholtz did not move to vacate the order. On October 28, 2016, we ordered Fahrenholtz to file a memorandum within 60 days to show cause why appropriate discipline should not be imposed. Fahrenholtz again failed to respond. Fahrenholtz did not file a brief, appear at oral argument, or otherwise participate in this disciplinary proceeding.

## ANALYSIS

The issue before us is whether Fahrenholtz should be reciprocally disciplined in Minnesota based on her disbarment in North Dakota. Under Rule 12(d), RLPR, the Director may petition for reciprocal discipline based solely on knowledge, from any source, "that a lawyer licensed to practice in Minnesota has been publicly disciplined ... in another jurisdiction." Unless we determine otherwise, a final determination in another jurisdiction that a lawyer has committed misconduct conclusively establishes that misconduct in our reciprocal discipline proceeding. *Id.* After a petition for reciprocal discipline has been filed, we may impose identical discipline "unless it appears that discipline procedures in the other jurisdiction were unfair, or the imposition of the same discipline would be unjust or substantially different from discipline warranted in Minnesota." *Id.* We therefore must determine whether North Dakota's disciplinary procedures were fair to Fahrenholtz and, if so, whether we would impose substantially different discipline for Fahrenholtz's misconduct.

### A.

▇▇ North Dakota's disciplinary procedures were fair to Fahrenholtz if they "were consistent with [the principles of] fundamental fairness and due process." *In re Schmidt*, 586 N.W.2d 774, 775 (Minn. 1998). Another jurisdiction's disciplinary proceedings are fair if the attorney is given notice of the proceedings and an opportunity to "present evidence of good character and other mitigating circumstances." *In re Koss*, 572 N.W.2d 276, 277 (Minn. 1997). And an attorney's decision not to participate in the disciplinary proceedings in another jurisdiction is not relevant to our determination of the fairness of those proceedings. *See Schmidt*, 586 N.W.2d at 775-76 (concluding that North Dakota's disbarment proceedings were fair, despite the attorney's failure to participate in them, because the proceedings gave the attorney notice and a chance to be heard).

▇▇ To determine whether the procedures were consistent with these principles, we review the record of North Dakota's disciplinary proceedings. *Id.* at 775-76. If we conclude that North Dakota gave Fahrenholtz notice of the proceedings and an opportunity to present evidence of her good character and mitigating circumstances for her conduct, then the disciplinary procedures were consistent with the principles of fundamental fairness and due process. *See id.* The North Dakota Disciplinary Board served Fahrenholtz with an amended summons and amended petition for discipline on December 3, 2014. *Fahrenholtz*, 863 N.W.2d at 240. At each phase of the North Dakota disciplinary proceedings, Fahrenholtz had the opportunity to present a defense and offer mitigating circumstances, but chose not to participate. *Id.* at 240-41. Because North Dakota gave notice to Fahrenholtz of the disciplinary proceedings and Fahrenholtz had an opportunity to present evidence in those proceedings, we hold that Fahrenholtz's disciplinary proceedings in North Dakota were consistent with the principles of fundamental fairness and due process.

## B.

■ Having concluded that the North Dakota proceedings were fair, we turn next to the question of discipline. The North Dakota Supreme Court concluded that Fahrenholtz's conduct violated numerous professional rules. *Id.* at 241. Specifically, the court found that Fahrenholtz failed to refund an advanced fee that had not been earned or incurred, failed to keep that fee separate from her own property, lacked competence and diligence, failed to communicate and consult with clients, failed to comply with client requests, and failed to expedite litigation consistent with her clients' interests. *Id.* Because Fahrenholtz has not participated in Minnesota's disciplinary proceedings, we deem her misconduct conclusively established. *See In re Roff,* 581 N.W.2d 32, 34-35 (Minn. 1998) (holding that an attorney's misconduct was conclusively established by another state's final adjudication when the attorney failed to participate in Minnesota's disciplinary proceedings).

Fahrenholtz's misappropriation of client funds occurred in a bankruptcy matter in which Fahrenholtz was paid a retainer but did no work for the client. *Fahrenholtz,* 863 N.W.2d at 240. The North Dakota Supreme Court did not use the word "misappropriation" to describe this conduct, but our case law makes clear that Fahrenholtz's conduct constituted misappropriation. *See In re Lundeen,* 811 N.W.2d 602, 608 (Minn. 2012) ("[The lawyer] misappropriated funds belonging to [clients] by performing no work on their matters and never returning the funds to the clients.").

"Misappropriation occurs whenever funds belonging to a client are not deposited in a trust account and are used for any purpose other than that specified by the client." *Id.* (citation omitted) (internal quotation marks omitted).

■ "Misappropriation of client funds alone is 'particularly serious misconduct and usually warrants disbarment absent clear and convincing evidence of substantial mitigating factors.'" [2] *In re Garcia,* 792 N.W.2d 434, 443 (Minn. 2010) (quoting *In re Rhodes,* 740 N.W.2d 574, 579 (Minn. 2007)). "Misappropriation of any kind, by its very nature, harms the public at large." *In re Fairbairn,* 802 N.W.2d 734, 743 (Minn. 2011). "Misappropriation also harms the legal profession because an attorney's misuse of funds 'entrusted to an attorney as a fiduciary for his clients is a breach of trust that reflects poorly on the entire legal profession and erodes the public's confidence in lawyers.'" *Id.* (quoting *In re Rooney,* 709 N.W.2d 263, 270 (Minn. 2006)).

Fahrenholtz's abandonment of the cases of at least eight clients also supports the sanction of disbarment in Minnesota. We have disbarred attorneys in cases involving serious client neglect. *See, e.g., In re Grzybek,* 567 N.W.2d 259, 263, 265 (Minn. 1997) (disbarring an attorney for repeatedly neglecting client matters, among other misconduct); *In re Pang,* 522 N.W.2d 921, 921 (Minn. 1994) (order); *In re Ladd,* 463 N.W.2d 281, 283-84 (Minn. 1990); *In re Weyhrich,* 339 N.W.2d 274, 279 (Minn. 1983) (same).

**2.** The amount of money Fahrenholtz misappropriated does not appear in the record, but we have disbarred lawyers who have misappropriated small amounts. *See, e.g., In re Rodriguez,* 783 N.W.2d 170, 170 (Minn. 2010) (order) (disbarring an attorney who misappropriated $650 and misrepresented the terms of agreements signed by his clients); *In re Grzybek,* 567 N.W.2d 259, 259-60, 265 (Minn. 1997) (disbarring an attorney who misappropriated $750, among other misconduct).

Finally, Fahrenholtz's failure to respond to reciprocal disciplinary proceedings in Minnesota supports disbarment. An attorney's refusal to cooperate with disciplinary proceedings aggravates the appropriate sanction. *In re Nelson*, 733 N.W.2d 458, 464 (Minn. 2007) ("[N]oncooperation with the disciplinary process, by itself, may warrant indefinite suspension and, when it exists in connection with other misconduct, noncooperation increases the severity of the disciplinary sanction."). There are no mitigating factors in this case that would support a sanction less than disbarment.

Because the disbarment of Fahrenholtz in North Dakota was not "unjust or substantially different from discipline warranted in Minnesota," imposing the reciprocal disbarment of Fahrenholtz is in accord with Rule 12(d), RLPR.

Accordingly, respondent Terri Lynn Fahrenholtz is disbarred from the practice of law in the State of Minnesota, effective upon the date of the filing of this opinion. Fahrenholtz shall comply with Rule 26, RLPR (requiring notice of disbarment to clients, opposing counsel, and tribunals), and shall pay $900 in costs under Rule 24(a), RLPR.

## CONCLUSION

For the foregoing reasons, respondent Terri Lynn Fahrenholtz is disbarred effective as of the date of the filing of this opinion.

Disbarred.